UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------------X
CHRISTIAN PUGLIESE,                                                     Civil Action No.

                    Plaintiff,

   -against-                                                                 **COMPLAINT**

BLUE HEN VENTURES LLC, individually, and d/b/a
EUROPEAN WAX CENTER, and EWC FRANCHISE, LLC,
individually, and d/b/a EUROPEAN WAX CENTER,
GISSELL QUESADA, and                                                   Plaintiff Demands a
YESENIA LEPE,                                                          Trial By Jury

                    Defendants.
-------------------------------------------------------------------------X

Plaintiff, CHRISTIAN PUGLIESE (hereinafter referred to as Plaintiff or " PUGLIESE"), by and through his attorneys, DEREK SMITH LAW GROUP, PLLC, as and for his Complaint in this action against the Defendants, BLUE HEN VENTURES LLC (hereinafter referred to as "BHV"), individually, and d/b/a EUROPEAN WAX CENTER, and EWC FRANCHISE, LLC (hereinafter referred to as "FRANCHISE"), individually, and d/b/a EUROPEAN WAX CENTER, GISSELL QUESADA (hereinafter referred to as "QUESADA"), and YESENIA LEPE (hereinafter referred to as "LEPE") (hereinafter collectively referred to as "Defendants"), respectfully alleges as follows:

## NATURE OF THE CLAIMS

1. Plaintiff brings this action charging that Defendants violated Plaintiff's rights pursuant to, *inter alia*, Title VII of the Civil Rights Act of 1964 as amended, 42 U.S.C. § 2000e et. seq. ("Title VII"), the Americans with Disabilities Act of 1990 ("ADA"), as amended, and New

York State Human Rights Law; New York Executive Law, § 290, et seq. ("the Executive Law"); based upon the supplemental jurisdiction of this Court pursuant to *United Mine Workers of America v. Gibbs*, 383 U.S. 715 (1966) and 28 U.S.C. §1367, seeking damages to redress the injuries Plaintiff suffered as a result of being discriminated against by his employer on the basis of his sex/gender, sexual orientation, disability, and perceived disability, along with a hostile work environment, retaliation, and wrongful termination.

## JURISDICTION AND VENUE

2. This Court has jurisdiction based on 28 U.S.C. § 1331 and supplemental jurisdiction over the state law claims under 28 U.S.C. § 1367.

3. Jurisdiction of this action is conferred upon this Court as this case involves a Federal Question under Title VII and the ADA. The Court also has jurisdiction pursuant to 29 U.S.C. § 2617; 28 U.S.C. §§ 1331, 1343, and pendent jurisdiction thereto.

4. Plaintiff filed a complaint with the Equal Employment Opportunity Commission on August 31, 2018.

5. Plaintiff received a Notice of Right to Sue letter, dated November 21, 2019.

6. Plaintiff satisfied all administrative prerequisites and is filing this case within ninety (90) days of receiving the Right to Sue Letter.

7. Venue is proper in this District based upon the fact that the events or omissions which gave rise to the claims asserted herein occurred within the Southern District of New York.

## PARTIES

8. Plaintiff PUGLIESE is an individual, homosexual male residing in the State of New York, Westchester County.

9. At all times material, Defendant BHV is a domestic limited liability company duly existing by the virtue and laws of the State of New York that does business in the State of New York.

10. At all times material, Defendant FRANCHISE is a foreign limited liability company duly existing by the virtue and laws of the State of Florida that does business in the State of New York.

11. At all times material, Defendants BHV and FRANCHISE are companies providing waxing services in New York.

12. At all times material, Defendant FRANCHISE owns and operates Defendant BHV.

13. At all times material, Defendants BHV and FRANCHISE (hereinafter collectively referred to as "EWC") jointly employed Plaintiff.

14. At all times material, Defendant QUESADA was and is the Store Manager of EWC's store located at 164 S Ridge St, Rye Brook, NY 10573 (hereinafter referred to as the "Rye Brook store").

15. At all times material, Defendant QUESADA held supervisory authority over Plaintiff, controlling many of Plaintiff's job duties. Defendant QUESADA held the power to hire and fire Plaintiff.

16. At all times material, Defendant LEPE was and is a Sales Associate for EWC who worked at the Rye Brook store.

17. Upon information and belief, at all times relevant to this Complaint, Defendants meet the definition of an "employer" under all applicable state and local statutes.

18. At all times material, Defendants FRANCHISE and BHV each had over fifteen (15) employees.

## FACTUAL ALLEGATIONS

19. At all times material, DAN DEMASI (hereinafter referred to as "DEMASI") was and is the Store Owner of the Rye Brook store.

20. At all times material, DEMASI held supervisory authority over Plaintiff, controlling many of Plaintiff's job duties. DEMASI held the power to hire and fire Plaintiff.

21. At all times material, ROSE FERRARA (hereinafter referred to as "FERRARA") was and is a Wax Specialist for EWC who worked at the Rye Brook store.

22. At all times material, DEVIN CIKOJA (hereinafter referred to as "CIKOJA") was and is a Wax Specialist for EWC who worked at the Rye Brook store.

23. At all times material, DOMINIQUE ARCHINA (hereinafter referred to as "ARCHINA") was and is a Wax Specialist for EWC who worked at the Rye Brook store.

24. At all times material, DANIELLE FRANCELLA (hereinafter referred to as "FRANCELLA") was and is a Wax Specialist for EWC who worked at the Rye Brook store.

25. At all times material, STEPHANIE DOMINQUEZ (hereinafter referred to as "DOMINQUEZ") was and is a Sales Associate for EWC who worked at the Rye Brook store.

26. In or around August 2017, Defendants hired Plaintiff as a Greeter and Sales Associate for their Rye Brook location.

27. At all times material, Plaintiff was the only male employee in the store.

28. Plaintiff suffers from hemorrhoids, a qualifying disability under the Americans with Disabilities Act, requiring him to take frequent bathroom breaks.

29. Upon learning of Plaintiff's hemorrhoids, QUESADA believed Plaintiff had hemorrhoids because he was homosexual, as anal intercourse is one cause of hemorrhoids. QUESADA attempted to humiliate Plaintiff for his sexual orientation, gender, and disability by mocking Plaintiff for his hemorrhoids.

30. Starting in or around August 2017 and continuing throughout Plaintiff's employment, Defendant QUESADA regularly disparaged and demeaned Plaintiff's disability.

31. By way of example, in or around September 2017, QUESADA loudly asked Plaintiff in front of other employees and customers, "I'm going to the store. Do you need any hemorrhoid cream?" QUESADA then loudly laughed at her own joke. Plaintiff was ashamed and humiliated.

32. In or around September 2017, Plaintiff asked QUESADA when he could take a break to go to the bathroom, as Plaintiff's hemorrhoids required him to take frequent bathroom breaks. QUESADA told Plaintiff "You cannot leave your desk" and "If you want a break, you can go work somewhere else."

33. QUESADA allowed Plaintiff's heterosexual, female co-workers to take breaks whenever they wanted. QUESADA treated Plaintiff less well due to his sexual orientation, gender, and disability.

34. In or around November 2017, QUESADA overheard Plaintiff and a co-worker joking about not using condoms during sexual intercourse. QUESADA interrupted and told Plaintiff and his co-worker that Plaintiff either already had HIV or will soon contract HIV, as HIV is stereotypically associated with the gay community.

35. Plaintiff calmly informed QUESADA that "Not every gay man has HIV" and he does not have HIV, but QUESADA insisted that Plaintiff was "lying" and had HIV.

36. QUESADA proceeded to publicly shame Plaintiff for his homosexuality. In the middle of the Rye Brook store, QUESADA called a health clinic and loudly attempted to schedule Plaintiff for an HIV test.

37. Plaintiff was mortified and told QUESADA he felt uncomfortable and would not talk to anyone from the clinic.

38. To Plaintiff's horror, QUESADA put the call on speakerphone in the main lobby of the tanning salon in front of a group of co-workers, including FERRARA and CIKOJA. QUESADA loudly told a nurse at the clinic that Plaintiff was "practicing unsafe sex and needs to meet with a counselor." After several minutes of this public humiliation and Plaintiff pleading with QUESADA to hang up the phone, QUESADA finally hung up.

39. Defendants subjected Plaintiff to a hostile work environment on the basis of his sexual orientation, gender, disability, and perceived disability.

40. After this incident, QUESADA repeatedly and regularly told Plaintiff's co-workers that Plaintiff had HIV.

41. In or around November 2017, immediately after using Chapstick she suspected was Plaintiff's, QUESADA told FRANCELLA and other co-workers that she thought she was "going to get HIV AIDS" from using Plaintiff's Chapstick, because he was a dirty and unsafe gay man.

42. Defendants subjected Plaintiff to a hostile work environment on the basis of his sexual orientation, gender, disability, and perceived disability.

43. In or around November 2017, Plaintiff requested that his office Secret Santa not buy women's makeup, as he knew this was a common Secret Santa gift in the office and did not use makeup. In response, QUESADA loudly said, "Don't worry Christian, someone will buy

hemorrhoid cream for you," in front of a group of co-workers, including FERRARA and CIKOJA.

44. Defendants subjected Plaintiff to a hostile work environment on the basis of his sexual orientation, gender, disability, and perceived disability.

45. In or around November 2017, QUESADA implemented a new policy against cell phone use, but QUESADA stated that this policy applied only to Plaintiff and not to any other employees. All employees were required to participate in a group text conversation.

46. Plaintiff pointed out that he was being treated differently than all the other employees and complained of discrimination to QUESADA. QUESADA responded by telling Plaintiff, "If you feel like it's unfair, you can leave." QUESADA then immediately gave Plaintiff a write up in retaliation for his complaint of discrimination and explicitly stated she was doing this for "leverage" and to "save [her own] ass" if anything happens. FERRARA, CIKOJA, and FRANCELLA witnessed this interaction.

47. Defendants retaliated against Plaintiff, because Plaintiff complained and opposed the unlawful conduct of Defendants related to the above protected classes.

48. At the end of November 2017, Plaintiff requested QUESADA schedule Plaintiff for fewer opening shifts and more closing shifts, and that she not schedule him to work with a specific co-worker, LEPE. QUESADA informed Plaintiff that his requests would be granted, saying, "No problem."

49. Shortly thereafter, Plaintiff saw the December schedule and found that the vast majority of his shifts were opening shifts, all of which involved working alongside LEPE.

50. At all times material, QUESADA and LEPE were close friends.

51. QUESADA discriminated against Plaintiff because of his sex/gender, sexual orientation, disability, and perceived disability, and because he complained and opposed the unlawful

conduct of Defendants related to the above protected classes, by intentionally not giving Plaintiff his requested shifts after assurances to the contrary.

52. In or around December 2017, QUESADA once again mocked Plaintiff's hemorrhoids, asking Plaintiff, "Do you need hemorrhoid cream as a Christmas present?" Plaintiff was humiliated by this discriminatory comment.

53. Defendants subjected Plaintiff to a hostile work environment on the basis of his sexual orientation, gender, disability, and perceived disability.

54. In or around December 2017, Plaintiff discovered through a co-worker, DOMINQUEZ, that Defendants had started a new group chat that included all employees at the Rye Brook location except for him.

55. On or about December 20, 2017, Plaintiff was working in the Rye Brook store alongside Defendant LEPE. LEPE went from the front desk to the break room and made herself some tea while Plaintiff watched the front desk. Plaintiff then told LEPE he was going to go to the break room himself to make a cup of coffee.

56. While in the break room, Plaintiff received an angry text from QUESADA asking why he was in the break room and not at the front desk. Plaintiff informed QUESADA that he and LEPE had both taken turns watching the front desk as they each made a cup of coffee and tea in the break room, respectively.

57. Plaintiff returned to the front desk and asked LEPE how QUESADA knew he was in the break room when she was not in the store. LEPE informed Plaintiff that she had texted QUESADA this information.

58. Plaintiff informed LEPE that he knew there was a group text conversation of store employees that he was not included in. LEPE became irate and began to shout at Plaintiff. LEPE then took out her phone and began to type something. Moments later, QUESADA called Plaintiff

and told him LEPE had a right to make tea but Plaintiff had no right to make coffee. During this call, Plaintiff complained that this was blatant discrimination, and QUESADA told Plaintiff she would come in to the store to discuss this with him.

59. Shortly thereafter, QUESADA came into the store and shouted at Plaintiff for complaining that he was being treated differently than his co-workers. Plaintiff, on the verge of tears, asked QUESADA if he should "just go home." QUESADA responded, "Yes, but don't come back."

60. Defendants discriminated against and terminated Plaintiff because of his sex/gender, sexual orientation, disability, and perceived disability, and because he complained and opposed the unlawful conduct of Defendants related to the above protected classes.

61. On or about December 20, 2017, Defendants terminated Plaintiff.

62. At the time Defendants terminated Plaintiff, Plaintiff's hourly rate was approximately $9.00 an hour, and Plaintiff worked approximately forty (40) hours per week.

63. The above are just some examples of the unlawful discrimination and retaliation to which Defendants subjected Plaintiff.

64. As a result of Defendants' unlawful and discriminatory actions, Plaintiff has endured unlawful humiliation resulting in extreme emotional distress, severe depression, extreme anxiety, and physical ailments including difficulty eating and sleeping.

65. As a result of Defendants' actions, Plaintiff felt extremely humiliated, degraded, victimized, embarrassed, and emotionally distressed.

66. As a result of Defendants' unlawful and discriminatory actions, Plaintiff has endured financial hardships and irreparable damage to his professional reputation.

67. As a result of the acts and conduct complained of herein, Plaintiff has suffered and will continue to suffer the loss of income, the loss of a salary, bonuses, benefits and other

compensation, which such employment entails. Plaintiff has also suffered pecuniary losses, emotional pain, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses. Plaintiff further claims aggravation, activation, and/or exacerbation of any preexisting condition.

68. As Defendants' actions were malicious, willful, outrageous, and conducted with full knowledge of the law, Plaintiff demands punitive damages against Defendants, jointly and severally.

69. Plaintiff claims alternatively (in the event Defendants Claim so or that the Court determines) that Plaintiff is an Independent Contractor, and Plaintiff makes all applicable claims for the above conduct and facts under the applicable law pertaining to Independent Contractors.

70. Plaintiff also seeks reinstatement.

## AS A FIRST CAUSE OF ACTION
## FOR DISCRIMINATION UNDER TITLE VII
## (AGAINST DEFENDANTS EWC)

71. Plaintiff repeats and re-alleges each and every allegation contained in the above paragraphs of this Complaint.

72. Title VII states in relevant part as follows:

   (a) Employer practices: It shall be an unlawful employment practice for an employer:

   (1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin;

73. This claim is authorized and instituted pursuant to the provisions of Title VII of the Civil Rights Act of 1964, 42 U.S.C. Section(s) 2000e et seq., as amended, for relief based upon the unlawful employment practices of the above-named Defendants EWC. Plaintiff complains of Defendants EWC's violations of Title VII's prohibition against discrimination in employment based, in whole or in part, upon an employee's sex/gender, sexual orientation, disability, and perceived disability.

74. Defendants EWC engaged in unlawful employment practices prohibited by 42 U.S.C. 2000e et seq., by harassing and otherwise discriminating against Plaintiff as set forth herein.

75. Defendants EWC violated the above and Plaintiff suffered numerous damages as a result.

### AS A SECOND CAUSE OF ACTION
### FOR RETALIATION UNDER TITLE VII
### (AGAINST DEFENDANTS EWC)

76. Plaintiff repeats and re-alleges each and every allegation contained in the above paragraphs of this Complaint.

77. Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. 2000e-3(a) provides that it shall be unlawful employment practice for an employer: "(1) to . . . discriminate against any of his employees . . . because she has opposed any practice made an unlawful employment practice by this subchapter, or because she has made a charge, testified, assisted or participated in any manner in an investigation, proceeding, or hearing under this subchapter."

78. Defendants EWC engaged in unlawful employment practices prohibited by 42 U.S.C. 2000e et seq. by discriminating against Plaintiff with respect to the terms, conditions or privileges of employment because of his opposition to the unlawful employment practices of Defendants.

79. Defendants EWC violated the above and Plaintiff suffered numerous damages as a result.

### AS A THIRD CAUSE OF ACTION
### FOR DISCRIMINATION UNDER
### THE AMERICANS WITH DISABILITIES ACT
### (AGAINST DEFENDANTS EWC)

80. Plaintiff repeats and re-alleges each and every allegation contained in the above paragraphs of this Complaint.

81. Plaintiff claims Defendants violated Title I of the Americans with Disabilities Act of 1990 (Pub. L. 101-336) (ADA), as amended, as these titles appear in volume 42 of the United States Code, beginning at section 12101.

82. SEC. 12112. [Section 102] specifically states "(a) General Rule. - No covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment."

83. Defendants EWC violated the section cited herein by discharging, creating, and maintaining discriminatory working conditions, and otherwise discriminating and retaliating against the Plaintiff because of his disability and perceived disability.

84. Plaintiff hereby makes a claim against Defendants EWC under all of the applicable paragraphs of the ADA.

85. Defendants EWC violated the above and Plaintiff suffered numerous damages as a result.

### AS A FOURTH CAUSE OF ACTION
### FOR RETALIATION UNDER
### THE AMERICANS WITH DISABILITIES ACT
### (AGAINST DEFENDANTS EWC)

86. Plaintiff repeats and re-alleges each and every allegation contained in the above paragraphs of this Complaint.

87. Plaintiff claims Defendants EWC violated Title I of the Americans with Disabilities Act of 1990 (Pub. L. 101-336) (ADA), as amended, as these titles appear in volume 42 of the United States Code, beginning at section 12101.

88. SEC. 12203. [Section 503] states:

    "(a) Retaliation. - No person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter."

89. Defendants EWC engaged in unlawful employment practice prohibited by the above statute, by retaliating against Plaintiff with respect to the terms, conditions or privileges of his employment because of his opposition to the unlawful employment practices of Defendants.

90. Defendants EWC violated the above and Plaintiff suffered numerous damages as a result.

## AS A FIFTH CAUSE OF ACTION
## FOR DISCRIMINATION UNDER STATE LAW
## (AGAINST ALL DEFENDANTS)

91. Plaintiff repeats and re-alleges each and every allegation contained in the above paragraphs of this Complaint.

92. New York State Executive Law § 296 provides that "1. It shall be an unlawful discriminatory practice: (a) For an employer or licensing agency, because of an individual's age, race, creed, color, national origin, sexual orientation, military status, sex, disability, predisposing genetic characteristics, [Effective January 19, 2016: familial status,] marital status, or domestic violence victim status, to refuse to hire or employ or to bar or to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment."

93. Defendants engaged in an unlawful discriminatory practice by discriminating against the Plaintiff because of his sex/gender, sexual orientation, perceived disability, and disability, as well as creating a hostile work environment and wrongfully terminating Plaintiff based on his membership in the aforementioned protected classes.

94. Plaintiff hereby makes a claim against Defendants under all of the applicable paragraphs of New York State Executive Law Section 296.

95. Defendants violated the above and Plaintiff suffered numerous damages as a result.

### AS A SIXTH CAUSE OF ACTION
### FOR RETALIATION UNDER STATE LAW
### (AGAINST ALL DEFENDANTS)

96. Plaintiff repeats and re-alleges each and every allegation contained in the above paragraphs of this Complaint.

97. New York State Executive Law §296(7) provides that it shall be an unlawful discriminatory practice: "For any person engaged in any activity to which this section applies to retaliate or discriminate against any person because he has opposed any practices forbidden under this article."

98. Defendants engaged in an unlawful discriminatory practice by retaliating, terminating, and otherwise discriminating against Plaintiff with respect to the terms, conditions or privileges of employment because of Plaintiff's opposition to the unlawful practices of Defendants.

99. Plaintiff makes a claim against Defendants under all of the applicable paragraphs of New York State Executive Law Section 296.

100. Defendants violated the above and Plaintiff suffered numerous damages as a result.

## AS A SEVENTH CAUSE OF ACTION
## FOR AIDING AND ABETTING UNDER STATE LAW
## (AGAINST ALL DEFENDANTS)

101. Plaintiff repeats and re-alleges each and every allegation contained in the above paragraphs of this Complaint.

102. New York State Executive Law §296(6) further provides that "It shall be an unlawful discriminatory practice for any person to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this article, or to attempt to do so."

103. Defendants engaged in an unlawful discriminatory practice by aiding, abetting, compelling and/or coercing the unlawful, discriminatory, and retaliatory conduct as stated herein.

104. Plaintiff makes a claim against Defendants under all of the applicable paragraphs of New York State Executive Law Section 296.

105. Defendants violated the above and Plaintiff suffered numerous damages as a result.

**WHEREFORE**, Plaintiff respectfully requests that this Court enter judgment in an amount which exceeds the jurisdiction of all lower courts for all damages including but not limited to compensatory damages, punitive damages, statutory damages, lost wages, back pay, front pay, attorney's fees, costs, interest and all other damages as are just and proper to remedy Defendants' unlawful employment practices.

## JURY DEMAND

Plaintiff demands a trial by jury as to all issues so triable.

Date:   New York, New York
        February 19, 2020

                                        Respectfully Submitted,
                                        **DEREK SMITH LAW GROUP, PLLC.**
                                        Attorneys for Plaintiff

                                    BY: /s/ Ishan Dave
                                        Ishan Dave, Esq.
                                        One Pennsylvania Plaza, 49th Floor
                                        New York, New York 10119
                                        (212) 587-0760